## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JEFFREY GRAY, | |
| *Plaintiff,* | Case No. 23 CV 00463-MLB |
| v. | |
| | Hon. Michael L. Brown |
| CITY OF ALPHARETTA, a political subdivision of the State of Georgia; ARICK FURR, a Lieutenant of the Alpharetta Department of Public Safety, in his individual capacity; and HAROLD SHOFFEITT, an officer of the Alpharetta Department of Public Safety, in his individual capacity, | Jury Trial Demanded |
| *Defendants.* | |

### DEFENDANT ARICK FURR'S ANSWER
### AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COMES Defendant Arick Furr, by and through his counsel, Emily E. Schnidt of Borkan & Scahill, Ltd., and in Answer to Plaintiff's Complaint, hereby submits the following:

1.      Army veteran Jeffrey Gray stood on the sidewalk in front of Alpharetta City Hall with a cardboard sign reading "God Bless the Homeless Vets" and saying the same aloud to passersby. For this, Alpharetta police lieutenant Arick Furr detained and arrested Gray for "panhandling" – in accordance with Alpharetta's anti-

1

panhandling policy, practice, or custom – searched Gray to obtain his identification, and turned off Gray's camera to prevent him from filming the officer misconduct.

**ANSWER: Defendant admits Jeffrey Gray held a cardboard sign in front of Alpharetta City Hall and was yelling at passersby. Defendant admits he detained Plaintiff and advised Plaintiff that panhandling was not allowed in Alpharetta. Defendant admits he turned the video off on Plaintiff's video camera. Defendant denies the remaining allegations of Paragraph 1.**

2.      After Officer Harold Shoffeitt joined in the detention, both officers interrogated and berated Gray before eventually releasing him.

**ANSWER: Defendant denies the allegations of Paragraph 2.**

3.      But when Gray sought to return to his advocacy, Lt. Furr banned Gray indefinitely from the area, prohibiting him from continuing to engage in expressive activity.

**ANSWER: Defendant denies the allegations of Paragraph 3.**

4.      Video and audio recordings of Gray's interactions with Alpharetta police are *available at* https://bit.ly/JeffGrayInAlpharetta.

**ANSWER: Defendant admits portions of his interactions with Plaintiff are available at the link provided. Defendant denies the audio and video recordings in the link contain the entirety of his interactions with Plaintiff.**

5.     Gray's speech about the plight of homeless veterans—whether "panhandling" or not—and his subsequent questioning of Lt. Furr's actions was clearly established as protected political expression. *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949).

**ANSWER: Defendant denies the allegations contained in Paragraph 5 because those allegations constitute a legal conclusion and contain a vague, incomplete, and/or inaccurate statement of the law and denies any allegations of wrongdoing or other misconduct alleged herein.**

6.     Even if Gray *was* "panhandling," it is clearly established that the First Amendment protects speakers asking others for help. *Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999).

**ANSWER: Defendant denies the allegations contained in Paragraph 6 because those allegations constitute a legal conclusion and contain a vague, incomplete, and/or inaccurate statement of the law and denies any allegations of wrongdoing or other misconduct alleged herein.**

7.     In arresting Gray for his refusal to identify himself, Alpharetta police violated Gray's clearly established First Amendment right to speak without being compelled to identify himself. *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 165–67 (2002).

**ANSWER: Defendant denies the allegations of Paragraph 7.**

8.    By preventing Gray from filming portions of their interaction, Lt. Furr violated Gray's clearly established First Amendment right to film law enforcement activity in public. *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

**ANSWER: Defendant denies the allegations of Paragraph 8.**

9.    When Lt. Furr indefinitely banned Gray from the public sidewalks outside of Alpharetta's City Hall, without procedural due process, he implemented Alpharetta's system of prior restraints in violation of clearly established First and Fourteenth Amendment rights. *United States v. Frandsen*, 212 F.3d 1231, 1236–37 (11th Cir. 2000); *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1267 (11th Cir. 2011).

**ANSWER: Defendant denies the allegations of Paragraph 9.**

10.    And in detaining, arresting, and searching Gray without reasonable articulable suspicion of a crime, the officers violated Gray's clearly established Fourth Amendment right to be free from unreasonable search and seizure. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *Bourgeois v. Peters*, 387 F.3d 1303, 1315–17 (11th Cir. 2004).

**ANSWER: Defendant denies the allegations of Paragraph 10.**

11.    Gray brings this action to vindicate his constitutional rights: to hold a sign in a public space, to peacefully communicate a political message to others, to not be unjustly compelled to identify himself, to safely film police officers without interference, and to not be subject to unlawful search and seizure for doing so in the future.

**ANSWER: Defendant denies the allegations of Paragraph 11.**

## JURISDICTION AND VENUE

12.    This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02.

**ANSWER: Defendant admits Plaintiff's Complaint purports to assert claims pursuant to federal statutes that seek to invoke the jurisdiction of this court.**

13.    This Court has jurisdiction over the federal claims asserted under 28 U.S.C. §§ 1331 and 1343.

**ANSWER: Defendant admits this Court has jurisdiction over Plaintiff's federal claims.**

14.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the City of Alpharetta resides in this district and, on information and belief, the individual defendants reside in the State of Georgia.

**ANSWER: Defendant admits this Court is the proper venue for Plaintiff's Complaint.**

15.   Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred in Fulton County, which is located in the Atlanta Division of the Northern District of Georgia.

**ANSWER: Defendant admits this Court is the proper venue for Plaintiff's Complaint.**

## THE PARTIES

16.   Plaintiff Jeffrey Gray is a United States citizen and a resident of St. Johns County, Florida. As a veteran of the United States Army, he believes in raising awareness of the plight of homeless veterans, protecting constitutional rights, and ensuring that law enforcement officers honor their oath "to support and defend" the United States Constitution. On January 27, 2022, officers employed by the City of Alpharetta ignored that oath when they detained, arrested, and searched Gray for engaging in alleged "panhandling" speech, unjustly forced him to identify himself, terminated his filming of the officers' misconduct, and indefinitely banned him from the public sidewalks outside of City Hall.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny whether Plaintiff is a United States citizen, a resident of St. Johns County, Florida, or if**

**he is a veteran of the United States Army.  Defendant denies the remaining allegations of Paragraph 16.**

17.    Defendant City of Alpharetta is a municipal corporation organized under the laws of the State of Georgia. Through its police, the City of Alpharetta has implemented a policy, practice, or custom of prohibiting any speech that it deems "panhandling." Pursuant to this policy, it also implements a regime of prior restraint through verbal and written bans— excluding people, like Gray, from speaking in public spaces without a meaningful opportunity to contest the deprivation of their rights. Alpharetta police enforced this policy against Gray in violation of his First and Fourteenth Amendment rights.

**ANSWER: Defendant admits the City of Alpharetta is a municipal corporation organized under the laws of the State of Georgia. Defendant denies the remaining allegations of Paragraph 17.**

18.    Defendant Arick Furr is a lieutenant employed by the Department of Public Safety of the City of Alpharetta. On January 27, 2022, Furr confronted Gray for allegedly panhandling outside Alpharetta City Hall, and consequently detained and arrested Gray, searched him to obtain his identity, turned his camera off to prevent him from further filming the encounter, and then banned Gray from sharing his protected message on the public sidewalks in front of Alpharetta City Hall. When

Lt. Furr detained, arrested, searched, and banned Gray for "panhandling," he acted under Alpharetta's anti-panhandling policy, in violation of Gray's First, Fourth, and Fourteenth Amendment rights. At all times relevant to the Complaint, Defendant Furr acted under the color of law. He is sued in his individual capacity.

**<u>ANSWER:</u> Defendant admits he is a lieutenant employed in the City of Alpharetta. Defendant admits he encountered Plaintiff outside Alpharetta City Hall and briefly detained him. Defendant admits he was acting under the color of law and that he is sued in his individual capacity. Defendant denies the remaining allegations of Paragraph 18.**

19.    Defendant Harold Shoffeitt is a police officer employed by the Department of Public Safety of the City of Alpharetta. Officer Shoffeitt assisted Lieutenant Furr in detaining Gray under Alpharetta's anti-panhandling policy, in violation of Gray's First and Fourth Amendment rights. At all times relevant to the Complaint, Defendant Shoffeitt acted under the color of law. He is sued in his individual capacity.

**<u>ANSWER:</u> Defendant admits Harold Shoffeitt is a police officer employed in the City of Alpharetta and that he assisted this Defendant with Plaintiff. Defendant denies Harold Shoffeitt violated Plaintiff's First and Fourth**

Amendment rights. Defendant lacks knowledge sufficient to admit or deny the remaining allegations of Paragraph 19.

## FACTUAL ALLEGATIONS

*Gray engaged in protected speech outside of Alpharetta City Hall.*

20.   On January 27, 2022, Gray stood on the public sidewalk in front of Alpharetta City Hall, approximately twenty feet from the front door to City Hall, holding a cardboard sign reading "God Bless the Homeless Vets."

**ANSWER: Defendant admits on January 27, 2022, Plaintiff stood on a public sidewalk in front of Alpharetta City Hall holding a cardboard sign. Defendant lacks knowledge sufficient to admit or deny the remaining allegations of Paragraph 20.**

21.   Gray greeted two people as they walked toward the entrance to City Hall with the words "God bless the homeless veterans."

**ANSWER: Defendant admits Plaintiff said, "God bless the homeless veterans" as two people walked into City Hall. Defendant denies the remaining allegations of Paragraph 21.**

22.   Gray said "God bless the homeless vets," or "God bless the homeless veterans" in a peaceful manner and at a reasonable volume typical for speaking on a public sidewalk.

**ANSWER: Defendant admits Plaintiff said, "God bless the homeless vets" and "God bless the homeless veterans." Defendant denies the remaining allegations of Paragraph 22.**

23.    Gray peacefully stood with his sign for less than five minutes.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the length of time Plaintiff was on the sidewalk outside of City Hall. Defendant denies the remaining allegations of Paragraph 23.**

24.    Gray did not engage in disorderly conduct.

**ANSWER: Defendant denies the allegations of Paragraph 24.**

25.    Gray did not ask any person for money or other charitable support while in Alpharetta.

**ANSWER: Defendant denies the allegations of Paragraph 25.**

26.    One of the people Gray greeted was Dan Merkel, an Alpharetta city councilman.

**ANSWER: Defendant admits Plaintiff encountered Councilman Dan Merkel. Defendant denies the remaining allegations of Paragraph 26.**

27.    Before entering City Hall, Councilman Merkel told Gray, "No panhandling up here."

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 27.**

28.    Upon entering City Hall, Councilman Merkel approached Lt. Furr, who was sitting inside the front corridor.

**ANSWER:** **Defendant admits the allegations of Paragraph 28.**

29.    Councilman Merkel complained to Lt. Furr about Gray allegedly panhandling.

**ANSWER:** **Defendant admits the allegations of Paragraph 29.**

30.    Councilman Merkel intended for Lt. Furr to silence Gray.

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 30.**

31.    Lt. Furr then opened the entrance door and, echoing Councilman Merkel's words, told Gray there was "no panhandling here" and to "move on." He also told Gray to "leave the downtown area, period." Lt. Furr then returned inside.

**ANSWER:** **Defendant admits he told Plaintiff there was no panhandling and he needed to move on. Defendant denies the remaining allegations of Paragraph 31.**

32.    Gray remained on the public sidewalk in front of City Hall holding his sign.

**ANSWER: Defendant denies the allegations of Paragraph 32.**

33.     Moments later, Gray greeted a woman entering City Hall with the phrase "God bless homeless vets."

**ANSWER: Defendant admits Plaintiff said, "God bless the homeless vets" to a woman walking into City Hall. Defendant denies the remaining allegations of Paragraph 33.**

34.     After entering City Hall, the woman spoke to Lt. Furr gesturing outside.

**ANSWER: Defendant admits a woman spoke to him about Plaintiff and gestured outside. Defendant denies the remaining allegations of Paragraph 34.**

35.     The woman complained to Lt. Furr about Gray's speech in front of City Hall.

**ANSWER: Defendant denies the allegations of Paragraph 35.**

*Lt. Furr detains and handcuffs Gray.*

36.     Immediately after speaking to the woman, Lt. Furr reemerged from City Hall.

**ANSWER: Defendant admits he encountered Plaintiff after speaking with a woman complaining of Plaintiff's conduct. Defendant denies the remaining allegations of Paragraph 36.**

37.    As shown in Gray's recordings, and as concluded in a subsequent Alpharetta police disciplinary report, Lt. Furr took no investigative steps to corroborate the information provided by Councilman Merkel or the woman.

**ANSWER: Defendant denies the allegations of Paragraph 37.**

38.    Instead of conducting an investigation, Lt. Furr immediately ordered Gray to "come here," thrice repeated his command that Gray "leave," and again said there was "no panhandling here."

**ANSWER: Defendant admits he told Plaintiff to "come here" and that he needed "to leave." Defendant denies that was the entirety of his interaction with Plaintiff and denies the remaining allegations of Paragraph 38.**

39.    Less than five minutes had passed since Gray began holding his sign and speaking briefly to passersby in front of Alpharetta City Hall.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the length of time Plaintiff was in front of City Hall. Defendant denies Plaintiff was speaking briefly to passersby.**

40.    When Gray did not leave, Lt. Furr demanded Gray's identification.

**ANSWER: Defendant denies the allegations of Paragraph 40.**

41.     Gray showed Lt. Furr that he had his driver's license but said that he did not want to give it to Lt. Furr without an explanation of the alleged crime justifying the detention.

**ANSWER: Defendant denies the allegations of Paragraph 41.**

42.     Lt. Furr again demanded Gray's identification.

**ANSWER: Defendant denies the allegations of Paragraph 42.**

43.     Gray declined and asked Lt. Furr to describe the "reasonable, articulable suspicion that crime is afoot," to justify his demand that Gray show him an identification card.

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's comments to Defendant. Defendant admits Plaintiff refused to provide him with his identification and asked Defendant his "reasonable articulable suspicion that crime is afoot." Defendant denies the remaining allegations of Paragraph 43.**

44.     Lt. Furr responded that "panhandling's illegal in the City of Alpharetta."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's comments to Defendant. Defendant admits the allegations of Paragraph 44.**

45.     When Gray laughed in disbelief and took a step away from Lt. Furr, the lieutenant immediately grabbed Gray's right wrist and ordered him to "put your hands behind your back," saying, "I'm not going to deal with you."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's comments to Defendant. Defendant admits he made those statements and that he detained Plaintiff. Defendant denies the remaining allegations of Paragraph 45.**

46.     Lt. Furr held Gray's arms behind his back and marched Gray to a nearby bench.

**ANSWER: Defendant admits he detained Plaintiff by holding his arms behind his back. Defendant denies the remaining allegations of Paragraph 46.**

47.     Lt. Furr handcuffed Gray at the bench.

**ANSWER: Defendant admits he handcuffed Plaintiff near the bench in front of City Hall.**

48.     Gray did not physically resist his arrest or threaten the officers' safety in any way.

**ANSWER: Defendant denies the allegations of Paragraph 48.**

49.    Although Gray did not ask anyone for charitable support, when Gray asked Lt. Furr why he thought Gray was panhandling, Lt. Furr answered that "two witnesses" said Gray had "asked people for money."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's comments to Defendant. Defendant admits he told Gray that two witnesses said he asked people for money in response to Plaintiff's inquiry, "What evidence do you have that I'm panhandling, stupid?"**

50.    Gray told Lt. Furr that he had not asked anyone for money and that he had a "camera that's been recording this whole thing the whole time."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's comments to Defendant. Defendant admits Plaintiff claimed he had not asked anyone for money and during their interactions Plaintiff made reference to a camera. Defendant denies the remaining allegations of Paragraph 50.**

51.    Gray questioned Lt. Furr's authority and criticized him, calling Lt. Furr a "disgrace."

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 51.**

52.    Gray expressed disbelief that Lt. Furr was a lieutenant in rank.

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's comments to Defendant. Defendant admits Plaintiff stated, "And you're a lieutenant? Are you kidding me? Are you kidding me?" Defendant lacks knowledge sufficient to admit or deny Plaintiff's intention behind his statements regarding Defendant's rank.**

*Lt. Furr stops Gray from filming their interaction.*

53.    As Lt. Furr sat Gray on the bench, Gray asked Lt. Furr to "turn the camera so it's filming what's going on."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's comments to Defendant. Defendant admits that after Plaintiff asked Defendant to grab his camera, Plaintiff later asked Defendant to turn the camera so it's filming what's going on.**

54.    Lt. Furr instead picked up the camera and turned it to face away from Gray and Lt. Furr.

**ANSWER: Defendant denies the allegations of Paragraph 54.**

55.    After Lt. Furr reached into Gray's pocket to seize Gray's driver's license, Lt. Furr then picked up Gray's camera, switched it off, and put it in Gray's pocket.

**ANSWER: Defendant admits he removed Plaintiff's driver's license from Plaintiff's pocket. Defendant admits he turned off Plaintiff's camera and put it in Plaintiff's pocket. Defendant denies the remaining allegations of Paragraph 55.**

56.    Gray objected to Lt. Furr turning off the camera and asked him why he did so.

**ANSWER: Defendant admits the allegations of Paragraph 56.**

57.    Lt. Furr told Gray he turned the camera off "because of your battery here."

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 57.**

58.    Lt. Furr's claim that he turned the camera off to preserve its battery was a pretext.

**ANSWER: Defendant denies the allegations of Paragraph 58.**

59.    Lt. Furr intended to prevent Gray from further recording their interaction.

**ANSWER: Defendant denies the allegations of Paragraph 59.**

60.     According to the subsequent Alpharetta police disciplinary report following an investigation or Lt. Furr's actions, Lt. Furr told his supervisor that he turned off Gray's camera because he was frustrated by Gray.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 60.**

61.     According to the same written report, Lt. Furr conceded to his supervisor that he "knew that he should not have manipulated the camera and should have allowed the camera to continue to record."

**ANSWER: Defendant denies the allegations of Paragraph 61.**

62.     Lt. Furr's termination of the recording thwarted Gray's intent to film his experience in front of Alpharetta City Hall that day.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 62.**

63.     Lt. Furr's termination of the recording served no legitimate law enforcement purpose.

**ANSWER: Defendant denies the allegations of Paragraph 63.**

64.     Unbeknownst to Lt. Furr, Gray's Apple Watch continued to record audio, but not video, of their interaction.

**ANSWER: Defendant admits he did not know Plaintiff's Apple Watch recorded their interactions but lacks knowledge sufficient to admit or deny whether the Apple Watch did in fact record his interactions with Plaintiff.**

*Lt. Furr and Officer Shoffeitt interrogate, criticize, and search Gray.*

65.    As audio recorded by Gray's Apple Watch confirms, Lt. Furr again told Gray that in the "City of Alpharetta, you can't ask people for money."

**ANSWER: Defendant admits the allegations of Paragraph 65.**

66.    Shortly after, Officer Shoffeitt joined Lt. Furr in his detention of Gray.

**ANSWER: Defendant admits Officer Shoffeitt arrived to assist him, but lacks knowledge sufficient to admit or deny the remaining allegations of Paragraph 66.**

67.    Officer Shoffeitt refused to listen to Gray's explanation of the events.

**ANSWER: Defendant denies the allegations of Paragraph 67.**

68.    Officer Shoffeitt told Gray that "holding a sign [and] standing there is panhandling."

**ANSWER: Defendant admits the allegations in Paragraph 68.**

69.    Officer Shoffeitt repeatedly asked Gray to describe his "goal."

**ANSWER: Defendant admits the allegations of Paragraph 69.**

70.    Lt. Furr told Officer Shoffeitt that Gray's goal was "to cause confrontation."

**ANSWER: Defendant denies the allegations of Paragraph 70.**

71.    Gray explained to Officer Shoffeitt that he was trying to "raise awareness of homeless veterans."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's comments to Defendant. Defendant admits this Paragraph accurately depicts a statement Plaintiff made during his interaction with Defendants.**

72.    Officer Shoffeitt criticized Gray, stating that "standing here where there's no homeless veterans is not going to bring any awareness to any of them."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's and Defendants' interactions and conversation. Defendant denies Officer Shoffeitt criticized Plaintiff. Defendant admits Officer Shoffeitt made this statement during his interaction with Plaintiff.**

73.    Officer Shoffeitt rhetorically asked what Gray wanted the people coming in and out of City Hall "to do" and criticized Gray's advocacy for "not offering anything they can do."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's and Defendants' interactions and conversation. Defendant denies Officer Shoffeitt made a rhetorical statement to Plaintiff. Defendant admits Officer Shoffeitt made this statement during his interaction with Plaintiff.**

74.    Officer Shoffeitt also rhetorically asked Gray why he didn't "have a flyer that says 'help me at the homeless shelter'" or "'help veterans.'"

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's and Defendants' interactions and conversation. Defendant denies Officer Shoffeitt made a rhetorical statement to Plaintiff. Defendant admits Officer Shoffeitt made this statement during his interaction with Plaintiff.**

75.    Officer Shoffeitt told Gray, "You're just coming here to cause controversy," and that "when you do that, just to make controversy out of your own words, that's disorderly conduct."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's and Defendants' interactions and conversation. Defendant admits Officer Shoffeitt made this statement during his interaction with Plaintiff.**

76.    Officer Shoffeitt told Gray that Lt. Furr reported "witnesses saying you're being controversial out here."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's and Defendants' interactions and conversation. Defendant admits Officer Shoffeitt made this statement during his interaction with Plaintiff.**

77.    Lt. Furr conducted a second search of Gray's person, removed the handcuffs, and walked away, leaving Gray in the custody of Officer Shoffeitt.

**ANSWER: Defendant denies he conducted a second search of Plaintiff's person. Defendant admits he removed the handcuffs and left Plaintiff on the bench with Officer Shoffeitt nearby. Defendant denies the remaining allegations of Paragraph 77.**

78.    Lt. Furr went to his cruiser to contact dispatch and use Gray's seized driver's license to determine whether Gray had any outstanding warrants.

**ANSWER: Defendant admits he went to his patrol vehicle to contact dispatch and determine if any warrants existed for Plaintiff. Defendant denies the remaining allegations of Paragraph 78.**

79.    Officer Shoffeitt then told Gray that "asking people for money, that fits the panhandling that they ask you not to do."

23

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations in Paragraph 79.**

80.    Gray, after explaining that he had not asked "a single person for money," asked Officer Shoffeitt if he was "still being detained."

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations in Paragraph 80.**

81.    Officer Shoffeitt responded that he was "not sure" of Lt. Furr's plan.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations in Paragraph 81.**

82.    With his hands now free, Gray turned his camera on so it could film the remainder of the interaction.

**ANSWER: Defendant admits Plaintiff turned on the video on his camera again. Defendant lacks knowledge sufficient to admit or deny the remaining allegations in Paragraph 82.**

83.    Lt. Furr returned and told Gray that "one of the councilmen and a female came in and said you're asking for money."

**ANSWER: Defendant admits the allegations in Paragraph 83.**

84.    Lt. Furr again told Gray that you "can't panhandle in the City of Alpharetta."

**ANSWER: Defendant admits the allegations in Paragraph 84.**

85.    After Gray again explained that he was not panhandling, Lt. Furr responded that Gray was "just trying to cause confrontation."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's and Defendants' interactions and conversation. Defendant lacks knowledge sufficient to admit or deny Plaintiff's statement about panhandling. Defendant admits he said, "If you want to help people, that's great. But just trying to cause confrontation, I asked you nicely to leave. Okay? Again, I didn't see you yelling but people were coming in saying you were yelling at them and stuff. You just don't want to act that way."**

86.    Lt. Furr conceded that he "didn't see [Gray] yelling at people," but said "people are coming in, saying [Gray was] yelling at them."

**ANSWER: Defendant denies the allegations of Paragraph 86.**

87.    Gray explained that he had not yelled at anyone, but was just saying "good morning, God bless the homeless veterans."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's and Defendants' interactions and conversation. Defendant admits Plaintiff claimed he was not yelling at anyone**

and that he claimed to only say "good morning, God bless the homeless veterans" when he was speaking to Defendant.

88.     Lt. Furr told Gray that he should "think about delivery and how people are gonna receive that message."

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's and Defendants' interactions and conversation. Defendant admits during their interactions he said, "If you want to do something, you know, that's great, but I would probably think about delivery and how people are gonna receive that message. I mean I think it's good that you are trying to bring, you know, light to stuff like that but it's all about delivery. That's it."**

89.     Gray asked if he was free to leave and Lt. Furr said he was free to go.

**ANSWER: Defendant admits the allegations of Paragraph 89.**

90.     Gray then asked Lt. Furr "Can I continue what I was doing?"

**ANSWER: Defendant admits the allegations of Paragraph 90.**

91.     Lt. Furr responded, "no sir, you need to leave."

**ANSWER: Defendant admits the allegations of Paragraph 91.**

92.     Lt. Furr added that "asking people for money, yelling at people" was unlawful in Alpharetta.

**ANSWER: Defendant denies this was the sequence of events on January 27, 2022 or represents the entirety of Plaintiff's and Defendants' interactions and conversation. Defendant admits during their interactions he made those statements.**

93.     Afraid the officers would arrest and jail him if he returned to his peaceful advocacy for homeless veterans in front of Alpharetta City Hall, Gray explained that he did not "want to go to jail," walked to his vehicle, and drove away.

**ANSWER: Defendant admits Plaintiff said he did not want to go to jail. Defendant lacks knowledge sufficient to admit or deny the remaining allegations of Paragraph 93.**

*Lt. Furr documents the encounter in a "Criminal Trespass Warning."*

94.     After Lt. Furr detained and indefinitely banned Gray, he prepared a "CRIMINAL TRESPASS WARNING" purporting to document the incident.

**ANSWER: Defendant denies preparing a document entitled "Criminal Trespass Warning." Defendant admits he documented the incident.**

95.     The trespass warning states that "two different individuals" told Lt. Furr that Gray was "panhandling and yelling at people outside" and that Furr told Gray that "panhandling was not allowed in Alpharetta."

**ANSWER: Defendant denies he prepared a trespass warning. Defendant admits in the documentation he prepared he made these statements.**

96.     Lt. Furr wrote that after he first confronted Gray, he was "told again by another citizen"—a third witness—who told him "there was a male yelling at people and asking for money."

**ANSWER: Defendant admits he documented that he was "told again by another citizen that there was a male yelling at people and asking for money." Defendant denies the remaining allegations of Paragraph 96.**

97.     The January 27, 2022, video and audio recordings of Gray's time in front of City Hall before and during the encounter with Lt. Furr confirm that Gray did not yell or ask for money.

**ANSWER: Defendant denies the allegations of Paragraph 97.**

98.     The video and audio recordings of Gray's time in front of City Hall, as well as Alpharetta's own video recording of Lt. Furr from inside City Hall, confirm that Lt. Furr only spoke to two people before detaining Gray.

**ANSWER: Defendant admits two people complained about Plaintiff's conduct and that he briefly detained Plaintiff. Defendant denies the remaining allegations of Paragraph 98.**

99.    As the video and audio recordings show, there was no third witness who spoke to Lt. Furr.

**ANSWER: Defendant admits a third witness did not complain about Plaintiff's conduct on January 27, 2022. Defendant denies the remaining allegations of Paragraph 99.**

100.    The trespass warning states that Lt. Furr detained Gray when he refused to produce identification and that Lt. Furr issued Gray "a warning for panhandling."

**ANSWER: Defendant admits he detained Plaintiff and that he told Plaintiff not to panhandle. Defendant denies the remaining allegations of Paragraph 100.**

101.    The trespass warning also falsely claims that "Gray agreed to leave."

**ANSWER: Defendant denies the allegations of Paragraph 101.**

102.    Gray left only because Lt. Furr ordered him to do so, and because he feared the officers would arrest and jail him if he remained.

**ANSWER: Defendant lacks knowledge sufficient information to admit or deny the allegations of Paragraph 102.**

103.    The written trespass warning purports to provide notice to Gray, even though Lt. Furr and Officer Shoffeitt never provided it to him, that "you are trespassing on private property and the owners of such property request that you not return for a period not to exceed one (1) year."

**ANSWER:** **Defendant denies the allegations of Paragraph 103.**

104.   The written trespass warning is consistent with Lt. Furr's verbal command that Gray leave the public space outside of Alpharetta City Hall.

**ANSWER:** **Defendant denies preparing a written trespass warning and therefore denies the allegations of Paragraph 104.**

105.   The written trespass warning, a standardized form, does not provide any information about how to challenge the warning's dictate to avoid the property.

**ANSWER:** **Defendant denies the allegations of Paragraph 105.**

106.   Gray did not receive a copy of the written trespass warning from Lt. Furr.

**ANSWER:** **Defendant denies preparing a written trespass warning and therefore denies the allegations of Paragraph 106.**

107.   About a month later, Gray learned of the written trespass warning after an uninvolved person received a copy of it via a public records request and forwarded it to him.

**ANSWER:** **Defendant denies preparing a written trespass warning and therefore denies the allegations of Paragraph 107.**

*After Gray posts video of the encounter to YouTube,*
*Lt. Furr writes a "revised" memo.*

108.   On the morning of February 5, 2022, Gray posted a video documenting a portion of the January 27, 2022, encounter to YouTube. The video, like many others created by Gray showing his positive and negative interactions with law enforcement, contrasted Alpharetta's response with the positive interaction he had with a law enforcement officer in Roswell, Georgia. This video is available at https://bit.ly/JeffGrayRoswell.

**ANSWER: Defendant denies he had a negative interaction with Plaintiff. Defendant lacks knowledge sufficient to admit or deny the remaining allegations of Paragraph 108.**

109.   On the same day Gray posted the comparison video, members of the public began contacting Alpharetta's elected officials, arguing that the police had violated Gray's First Amendment rights.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 109.**

110.   On information and belief, Alpharetta Mayor Jim Gilvin viewed the video and then sent an email to Alpharetta Police Chief John Robison asserting that "it looks like one of our officers may have arrested a man for soliciting money in front of our city hall."

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 110.**

111.   Chief Robison responded by telling Gilvin via email that Lt. Furr "had two witnesses tell him [Gray] was asking for money."

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 111.**

112. Chief Robison later emailed Mayor Gilvin asserting that "[t]here's just nothing to this" and that Lt. Furr "put the guy in cuffs because he was playing games about be[ing] identified."

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 112.**

113.   After Gray posted the video, Lt. Furr wrote a "revised memo," dated February 5, 2022, about the January 27, 2022, interaction with Gray.

**ANSWER: Defendant denies he drafted a "revised memo" dated February 5, 2022 and therefore denies the allegations of Paragraph 113.**

114. Lt. Furr sent the "revised memo" to his supervisor, J.T. Simpson, Alpharetta Police Department's Captain of the Uniform Patrol Division.

**ANSWER: Defendant denies he drafted a "revised memo" and therefore denies the allegations of Paragraph 114.**

115.  Alpharetta Police Chief John Robison also received the "revised memo."

**<u>ANSWER:</u> Defendant denies he drafted a "revised memo" and therefore denies the allegations of Paragraph 115.**

116.  Chief Robison shared the "revised memo" with Mayor Gilvin.

**<u>ANSWER:</u> Defendant denies he drafted a "revised memo" and therefore denies the allegations of Paragraph 116.**

117.  In the "revised memo," Lt. Furr claimed that "a citizen" alerted him that Gray was "panhandling aggressively and yelling at people outside," adding the word "aggressively."

**<u>ANSWER:</u> Defendant denies he drafted a "revised memo" and therefore denies the allegations of Paragraph 117.**

118.  Lt. Furr's "revised memo" also identified Councilman Merkel as "another citizen" who complained.

**<u>ANSWER:</u> Defendant denies he drafted a "revised memo" and therefore denies the allegations of Paragraph 118.**

119.  As the video and audio recordings show, Gray did not "panhandl[e] aggressively and yell[] at people" while outside of Alpharetta City Hall on January 27, 2022.

**ANSWER: Defendant denies the allegations of Paragraph 119.**

120.  Lt. Furr's "revised memo" omits reference to any third witness, as he had alleged in the trespass warning.

**ANSWER: Defendant denies he drafted a "revised memo" and therefore denies the allegations of Paragraph 120.**

121. On or about March 3, 2022, the Alpharetta Department of Public Safety disciplined Lt. Furr following an investigation into his conduct on January 27, 2022.

**ANSWER: Defendant admits the allegations of Paragraph 121.**

122. The Alpharetta Department of Public Safety's investigation into Lt. Furr's actions concluded that:

> (a)   Lt. Furr's detention of Gray was without a "legal basis" and "not within the scope of the law";
> (b)   Lt. Furr did not take "investigative steps to corroborate" Councilman Merkel's allegations;
> (c)   There was no indication that Gray was a "threat to anyone";
> (d)   Lt. Furr's search of Gray's pocket was without "legal justification";
> (e)   Lt. Furr's termination of Gray's recording was without "apparent justification";
> (f)   Lt. Furr's "order" that Gray "leave the area" was without "legal justification," but;
> (g)   Lt. Furr should have investigated the complaints about Gray panhandling in order to perform "good customer service."

**ANSWER: Defendant admits the Internal Affairs investigation concluded that**

**this Defendant did not take investigative steps to corroborate Councilman**

34

Merkel's allegations and that this Defendant's order to leave the area was without legal justification. Defendant denies the remaining allegations of Paragraph 122.

123. Although Alpharetta's Department of Public Safety concluded that the trespass notice was without a lawful basis, it has not rescinded the written notice or Lt. Furr's verbal order indefinitely banning Gray from returning to Alpharetta City Hall

**ANSWER:** **Defendant denies Alpharetta's Department of Public Safety concluded the trespass notice was without a legal basis and therefore denies the remaining allegations of Paragraph 123.**

124. Gray has relatives who reside in the area north of Atlanta and occasionally travels to the area around Alpharetta. Gray has purposefully avoided entering Alpharetta's city limits due to the directive that he not return, taking different routes to avoid the City of Alpharetta.

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 124.**

*Alpharetta has a policy, practice, or custom of chilling and punishing "panhandling" speech.*

125. Alpharetta's police department implements a policy, practice, or custom of harassing, threatening, detaining, arresting, and/or citing for trespass

members of the public who engage in "panhandling" speech—asking people for monetary or other charitable support—on public property, despite the absence of reasonable suspicion that the individuals violated any law.

**ANSWER: Defendant denies the allegations contained within this Paragraph and denies any allegation of misconduct or other wrongdoing directed against him as alleged herein.**

126. On information and belief, Alpharetta's anti-panhandling policy is unwritten.

**ANSWER: Defendant denies the allegations of Paragraph 126.**

127. Alpharetta's Department of Public Safety has, through its social media channels, warned residents about "crazy scams" by "panhandlers":

> PANHANDLERS – Many panhandlers, some of whom portray themselves as veterans, homeless, or stranded individuals, are nothing more than professional swindlers who make easy money playing upon the patriotism, generosity, or sympathies of compassionate citizens. Caution should always be exercised when solicited for money by people on the street.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 127.**

128. Among Alpharetta police officers, there is a consistent practice of telling people that solicitation or panhandling is unlawful, regardless of the location or manner in which they seek assistance.

**ANSWER:** **Defendant denies the allegations contained within this Paragraph and denies any allegation of misconduct or other wrongdoing directed against him as alleged herein.**

129.   Among Alpharetta police officers, there is a consistent practice of harassing, threatening, detaining, arresting, and/or citing people for trespass for engaging in solicitation or panhandling, regardless of the location or manner in which they seek assistance.

**ANSWER:** **Defendant denies the allegations contained within this Paragraph and denies any allegation of misconduct or other wrongdoing directed against him as alleged herein.**

130.   According to Alpharetta police reports, over 40 Alpharetta police officers filed more than 100 reports related to individuals allegedly panhandling or soliciting between January 6, 2020, and October 25, 2022.

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 130.**

131.   Many of these reports reflect the Department's policy, practice, or custom of criminalizing speakers who engage in First Amendment protected speech, such as asking others for monetary or other support.

**ANSWER:** Defendant denies the allegations contained within this Paragraph and denies any allegation of misconduct or other wrongdoing directed against him as alleged herein.

132.  For example, on March 1, 2020, Officer Alvizua-Flores "observed" a musician "setting up a speaker, guitar, and a box to collect money" outside a store. Officer Alvizua-Flores wrote in a police report that he told the musician that it was "against city ordinance to panhandle in the city."

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 132.

133. On March 5, 2020, Officer Bender encountered a family asking passersby for charity. Officer Bender wrote in his report that he told them to "stop panhandling in Alpharetta or [you] will go to jail."

**ANSWER:** Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 133.

134.  On May 22, 2020, Officer Fields encountered a man "holding a sign asking for money." Officer Fields wrote in his report that he told the man "panhandling was not allowed in Alpharetta[,]" and that he threatened the man that he "would be cited if caught panhandling again in the area."

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 134.**

135.   On September 1, 2020, Officer Nowlin encountered a "panhandler" and wrote in his report that he told him that "he cannot beg for money in the city."

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 135.**

136.   On October 8, 2020, Officer Bradford encountered a group on public property distributing flyers promoting a local church that supports people experiencing substance-use disorder and homelessness, and seeking donations. Officer Bradford accused them of "panhandling" and told the group that they could not "idle or loiter[.]"

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 136.**

137.   On November 24, 2020, Officer Nowlin wrote in a report that he encountered a woman whose "English was not good" and that he told her that "she cannot panhandle in Alpharetta."

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 137.**

138.   Two days later, Officer Mullins encountered the same woman and wrote in her report that she told the woman to "leave Alpharetta[.]"

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 138.**

139.   On February 7, 2021, Officer Nowlin encountered a man "with his wife and toddler panhandling" outside of a restaurant. Officer Nowl wrote in his report that he "explained that they cannot panhandle in Alpharetta."

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 139.**

140.  On February 21, 2021, Officer Kimbel encountered a man seeking charity outside of a store, holding a "card board sign saying help I'm a veteran." Officer Kimbel wrote in his report that he "told him that he cannot panhandle in Alpharetta and for that matter anywhere in North Fulton County."

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 140.**

141.  On August 29, 2021, Officer Fields encountered a man asking for charitable support on a roadside. Officer Fields wrote in his report that he told the man that "both standing in the roadway and panhandling were against the law in Alpharetta."

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 141.**

142. Eight days before Christmas in 2021, Officer Medico arrested a homeless woman for "soliciting in roadway." In his report, Officer Medico noted that the woman "has been warned not to panhandle in the city" by multiple Alpharetta officers.

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 142.**

143. Pursuant to Alpharetta Department of Public Safety policy, all criminal and non-criminal incidents are documented in reports.

**ANSWER: Defendant denies the allegations of Paragraph 143.**

144. Pursuant to Alpharetta Department of Public Safety Policy No. 02-04, all reports are submitted to a supervisor who must "thoroughly review" each report.

**ANSWER: Defendant admits the allegations of Paragraph 144.**

145. Pursuant to Alpharetta Department of Public Safety Policy No. 03-07, reports approved by a supervisor are then submitted to a centralized records system.

**ANSWER: Defendant admits the allegations of Paragraph 145.**

146. Mayor Gilvin knew and knows of Alpharetta's anti-panhandling policy.

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 146.**

147.  Mayor Gilvin has continued to make clear—despite knowing about Gray's arrest and the subsequent discipline of Lt. Furr—that he does not want people panhandling in Alpharetta.

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 147.**

148.  At a May 2, 2022 City Council meeting, in discussing a proposal to license street performers, Mayor Gilvin noted that he did not have negative experiences with street performers elsewhere, but was "much more concerned about the panhandlers on the streetcorners with signs in the middle of intersections, and things like that."

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 148.**

149. Councilman Merkel also knew and knows of Alpharetta's anti-panhandling policy.

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 149.**

150.  At the May 2, 2022 City Council meeting, Councilman Merkel, acting as Mayor Pro Tem, noted how Alpharetta was "already fighting panhandlers as it is," in expressing his disapproval of the street performer proposal.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 150.**

151.  The anti-panhandling policy is so well understood among Alpharetta officials that the mention of panhandling from Councilman Merkel spurred immediate action from Lt. Furr to chill Gray's protected speech.

**ANSWER: Defendant denies the allegations of Paragraph 151.**

152.  Alpharetta's police officers continue to enforce its anti-panhandling policy even after the city's senior leadership became aware of Lt. Furr's unlawful detention and arrest of Gray, and the subsequent discipline of Lt. Furr.

**ANSWER: Defendant denies the allegations of Paragraph 152.**

153.  On June 15, 2022, Officer Kimbel detained a woman and three children because she held a sign saying she had "3 children and need $ to help with rent." In his report, Officer Kimbel noted that he told the woman "not to ask for money again" because the Georgia Division of Family and Children Services was involved and it would be "jail for them if they come back."

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 153.**

154. On October 25, 2022, Officer Kimbel reported that he "bluntly told [a juvenile] that the next time they are panhandling in Alpharetta they would be arrested and go to jail."

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 154.**

<h3 style="text-align:center">INJURIES TO PLAINTIFF</h3>

155. The City of Alpharetta and the conduct of its sworn law enforcement officers injured Gray—injuries that continue to this day because Alpharetta has a policy, practice, or custom banning speech its police deem to be "panhandling."

**ANSWER: Defendant denies the allegations of Paragraph 155.**

156. On January 27, 2022, Lt. Furr prevented Gray from engaging in protected expression about society's treatment of homeless veterans, physically restrained Gray, and expressly ordered him to not reengage in his expressive activity—chilling and restraining his ability to speak.

**ANSWER: Defendant denies the allegations of Paragraph 156.**

157. Gray was injured because Lt. Furr forcibly terminated, over Gray's objection, his filming of Lt. Furr's conduct.

**ANSWER:** **Defendant denies the allegations of Paragraph 157.**

158.  Gray was further injured when Lt. Furr stripped him of his anonymity and privacy, forcing him to identify himself and recording his name and information in public records.

**ANSWER:** **Defendant denies the allegations of Paragraph 158.**

159.  Gray was also injured because Lt. Furr detained, handcuffed, and searched Gray without reasonable articulable suspicion of a crime—unjustly restraining Gray's free movement and invading his privacy.

**ANSWER:** **Defendant denies the allegations of Paragraph 159.**

160.  During their detention of Gray, Lt. Furr and Officer Shoffeitt also denigrated Gray's expressive activity, condemned him for being "controversial," and threatened to charge him with disorderly conduct because of the content of his speech.

**ANSWER:** **Defendant denies the allegations of Paragraph 160.**

161.  The officers' conduct in detaining, interrogating, and berating Gray degraded his personal dignity, restrained his personal autonomy, and further eroded his faith that police will "support and defend" the United States Constitution.

**ANSWER:** **Defendant denies the allegations of Paragraph 161.**

162.   The injuries to Gray's ability to speak in Alpharetta are not left in the past—they are ongoing.

**ANSWER: Defendant denies the allegations of Paragraph 162.**

163.   Alpharetta police continue to enforce the city's anti-panhandling policy against speech they perceive to be panhandling, and there is a substantial risk that Alpharetta officers will again interpret Gray's speech to be "panhandling," chilling his speech.

**ANSWER: Defendant denies the allegations of Paragraph 163.**

164.   In addition, Lt. Furr's indefinite ban of Gray burdened and continues to burden Gray's ability to engage in protected speech of any kind in Alpharetta, particularly in front of Alpharetta City Hall, and forces him to feel as though he cannot travel through or within Alpharetta.

**ANSWER: Defendant denies the allegations of Paragraph 164.**

165.   Gray wants to continue advocating for homeless veterans in Alpharetta. But Alpharetta's continued enforcement of its anti-panhandling policy and its officers' unlawful detention, arrest, and search of his person, caused and continue to cause Gray to fear detention, arrest, invasion of privacy, and imprisonment for exercising his First Amendment right to engage in such advocacy.

**ANSWER: Defendant denies the allegations of Paragraph 165.**

**FIRST CAUSE OF ACTION**
**First Amendment Retaliation**
**(42 U.S.C. § 1983)**
**(Against Lt. Furr and Officer Shoffeitt in their Individual Capacities)**

166.  Plaintiff re-alleges and incorporates the paragraphs 1–165 of this Complaint as if repeated here.

**ANSWER: Defendant adopts and restates his answers to the preceding allegations directed against him as his answer to this Paragraph as though fully set forth herein.**

167.  The First Amendment protects the right to be free from retaliation by a public official for the exercise of the right to speak.

**ANSWER: Paragraph 167 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

168.  It is well established that the First Amendment protects charitable solicitation, including so-called "panhandling." *Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999).

**ANSWER: Paragraph 168 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

169.  It is well established that the First Amendment protects expression on public issues. *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011).

**ANSWER: Paragraph 169 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

170.  Gray's expression—whether through his sign or saying "God bless the homeless vets," and whether construed as raising awareness for homeless veterans or as "panhandling"—is protected by the First Amendment.

**ANSWER: Paragraph 170 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

171. It is well established that the First Amendment protects "verbal criticism and challenge directed at police officers." *Houston v. Hill*, 482 U.S. 451, 461–62 (1987).

**ANSWER: Paragraph 171 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

172. Gray's verbal criticism of the authority and conduct of Lt. Furr and Officer Shoffeitt is protected by the First Amendment.

**ANSWER: Paragraph 172 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

173. Lt. Furr and Officer Shoffeitt's actions would be sufficient to deter a person of ordinary firmness from exercising their First Amendment rights. These actions included:

(a)    Physically detaining Gray;

(b)    Placing Gray in handcuffs;

(c)    Terminating Gray's video recording;

(d)    Requiring Gray to provide identification;

(e)    Attempting to learn whether Gray could be detained on an unrelated warrant;

(f)    Searching Gray;

(g)    Prohibiting Gray from continuing to engage in expressive activity; and

(h)    Requiring Gray to leave and not return to the "downtown area" around Alpharetta City Hall for at least one year.

**ANSWER: Defendant denies the allegations of Paragraph 173, subparagraphs (a) to (h).**

174. Lt. Furr and Officer Shoffeitt falsely asserted that panhandling is prohibited by Alpharetta ordinance.

**ANSWER: Defendant denies the allegations of Paragraph 174.**

175. Lt. Furr and Officer Shoffeitt's conduct was motivated by their objections to the content of Gray's sign, by his vocalization of the words "God bless the homeless vets," by Gray's criticism of Lt. Furr, by Gray's verbal challenge to Lt. Furr's authority, and by Gray's attempt to film Lt. Furr's response to his expressive activity.

**ANSWER: Defendant denies the allegations of Paragraph 175.**

176.  As further alleged in paragraphs 280 through 288, *infra*, Lt. Furr and Officer Shoffeitt lacked reasonable suspicion, arguable reasonable suspicion, probable cause, or arguable probable cause to detain or arrest Gray.

**ANSWER: Defendant denies the allegations of Paragraph 176.**

177.  At the conclusion of the officers' interaction with Gray, Lt. Furr prevented Gray from continuing to engage in expressive activity, curtailing and chilling Gray's protected speech.

**ANSWER: Defendant denies the allegations of Paragraph 177.**

178.  Lt. Furr had no lawful basis to prohibit Gray from continuing to engage in expressive activity.

**ANSWER: Defendant denies the allegations of Paragraph 178.**

179.  Actions taken by Lt. Furr and Officer Shoffeitt—including detaining, arresting, and searching Gray—in retaliation for Gray's expressive activity damaged Gray by depriving him of his well-established constitutional right to engage in expressive activity on the public sidewalk outside of City Hall, a traditional public forum, entitling Gray to declaratory relief and compensatory damages, including at least nominal damages, against Lt. Furr and Officer Shoffeitt.

**ANSWER: Defendant denies the allegations of Paragraph 179.**

180.  Because the retaliatory actions taken by Lt. Furr and Officer Shoffeitt were malicious, oppressive, and in reckless disregard of Gray's well- established First Amendment rights, Gray is entitled to punitive damages against Lt. Furr and Officer Shoffeitt.

**<u>ANSWER:</u> Defendant denies the allegations of Paragraph 180.**

## SECOND CAUSE OF ACTION
### First Amendment Facial Overbreadth Challenge to the City of Alpharetta's Policy, Practice, or Custom Prohibiting "Panhandling" (42 U.S.C. § 1983) (Against the City of Alpharetta)

Count II of Plaintiff's Complaint is not directed against this Defendant. Therefore, Defendant does not answer or respond to Plaintiff's allegations contained within this Count except to the extent that Plaintiff realleges and incorporates these and earlier Paragraphs in this Count, as well as other Counts against this Defendant.

## THIRD CAUSE OF ACTION
### As-Applied First Amendment Challenge to the City of Alpharetta's Policy, Practice, or Custom Prohibiting "Panhandling" (42 U.S.C. § 1983) (Against the City of Alpharetta, Lt. Furr and Officer Shoffeitt in their Individual Capacities)

200.  Plaintiff re-alleges and incorporates paragraphs 1–165, 168–70, 182–90, 193, and 195–99 of this Complaint as if repeated here.

**ANSWER:** **Defendant adopts and restates his answers to the preceding allegations directed against him as his answer to this Paragraph as though fully set forth herein.**

201.   Although Gray never asked any person for monetary or other charitable support, his expression was interpreted by Councilman Merkel, Lt. Furr, and Officer Shoffeitt as "panhandling."

**ANSWER: Defendant denies the allegations of Paragraph 201.**

202.   Pursuant to Alpharetta's policy, practice, or custom of prohibiting "panhandling," Gray was ordered by Lt. Furr to discontinue his expressive activity, detained, handcuffed, and indefinitely banned from the area.

**ANSWER: Defendant denies the allegations of Paragraph 202.**

203.   Alpharetta's policy, practice, or custom, even if it was constitutional, could not lawfully be applied to Gray because Gray was not engaged in "panhandling." *See City of Fort Lauderdale*, 177 F.3d at 956.

**ANSWER: Defendant denies the allegations of Paragraph 203.**

204.   Gray is entitled to declaratory and injunctive relief enjoining the City of Alpharetta from enforcing its anti-panhandling policy, practice, or custom against him.

**ANSWER: Defendant denies the allegations of Paragraph 204.**

205.   In applying its policy, practice, or custom of prohibiting "panhandling" in Alpharetta, the City of Alpharetta injured Gray by depriving him of his constitutional right to engage in expressive activity in traditional public fora, entitling Gray to declaratory relief and compensatory damages, including at least nominal damages, against all Defendants.

**ANSWER: Defendant denies the allegations of Paragraph 205.**

206.   Because the application of Alpharetta's policy, practice, or custom of prohibiting "panhandling" was applied in reckless disregard of Gray's well-established First Amendment rights, Gray is entitled to punitive damages against Lt. Furr and Officer Shoffeitt.

**ANSWER: Defendant denies the allegations of Paragraph 206.**

**FOURTH CAUSE OF ACTION**
**Facial First Amendment Challenge to the City of Alpharetta's Policy,**
**Practice, or Custom Prohibiting "Panhandling" as a**
**Content-Based Limitation on Speech**
**(42 U.S.C. § 1983)**
**(Against the City of Alpharetta)**

Count IV of Plaintiff's Complaint is not directed against this Defendant. Therefore, Defendant does not answer or respond to Plaintiff's allegations contained within this Count except to the extent that Plaintiff realleges and incorporates these and earlier Paragraphs in this Count, as well as other Counts against this Defendant.

## FIFTH CAUSE OF ACTION
### First Amendment Challenge to Lt. Furr's Interference with Gray's Right to Anonymity and Freedom from Compelled Speech
### (42 U.S.C. § 1983)
### (Against Lt. Furr in his Individual Capacity)

220.   Plaintiff re-alleges and incorporates paragraphs 1–124, 155–65, and 167–78 of this Complaint as if repeated here.

**ANSWER: Defendant adopts and restates his answers to the preceding allegations directed against him as his answer to this Paragraph as though fully set forth herein.**

221.   The First Amendment protects the right of speakers to engage in public expressive activity, including solicitation, without being compelled to identify themselves to government authorities. *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 165–67 (2002).

**ANSWER: Paragraph 221 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

222.   The First Amendment also protects the right to refrain from speaking, just as it protects the right to speak. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

**ANSWER: Paragraph 222 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

223.   Compulsory identification of a speaker requires, at a minimum, sufficient cause. *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 200 (1999).

**ANSWER: Paragraph 223 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

224.   Gray was unlikely to be recognized by any person in Alpharetta.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 224.**

225.   On information and belief, Gray's identity was not known to Lt. Furr before Lt. Furr confronted Gray.

**ANSWER: Defendant admits he did not know Plaintiff's identity before he encountered Plaintiff. Defendant denies the remaining allegations of Paragraph 225.**

226.   Lt. Furr knew that Gray did not want to identify himself to law enforcement.

**ANSWER: Defendant denies the allegations of Paragraph 226.**

227.   Lt. Furr lacked sufficient cause to compel Gray to identify himself to law enforcement.

**ANSWER: Defendant denies the allegations of Paragraph 227.**

228.   Alpharetta Chief of Public Safety John Robison asserted to city leadership that Lt. Furr "put [Gray] in cuffs because he was playing games about [being] identified."

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 228.**

229.   Lt. Furr attempted to compel Gray to verbally identify himself to law enforcement.

**ANSWER:** **Defendant denies the allegations of Paragraph 229.**

230.   When Gray refused, Lt. Furr handcuffed and searched Gray without his consent in order to obtain his identification.

**ANSWER:** **Defendant denies the allegations of Paragraph 230.**

231.   Lt. Furr then recorded information about Gray's identity in records, including but not limited to a written trespass warning that would subject Gray to arrest if he returned to the sidewalk in front of City Hall.

**ANSWER:** **Defendant denies preparing a written trespass warning and therefore denies the allegations of Paragraph 231.**

232.   By forcibly compelling Gray to identify himself, Lt. Furr injured Gray by violating his well-established First Amendment right to engage in anonymous

expression, entitling Gray to declaratory relief and compensatory damages, including at least nominal damages, against Lt. Furr.

**ANSWER: Defendant denies the allegations of Paragraph 232.**

233.   Because Lt. Furr's conduct in forcibly compelling Gray to identify himself was malicious, oppressive, and in reckless disregard of Gray's well-established First Amendment rights, Gray is entitled to punitive damages against Lt. Furr.

**ANSWER: Defendant denies the allegations of Paragraph 233.**

**SIXTH CAUSE OF ACTION**
**First Amendment Challenge to Lt. Furr's Interference with Gray's**
**Right to Film Police**
**(42 U.S.C. § 1983)**
**(Against Lt. Furr in his Individual Capacity)**

234.   Plaintiff re-alleges and incorporates paragraphs 1–122, 125–65, 167–78, and 183–88 of this Complaint as if repeated here.

**ANSWER: Defendant adopts and restates his answers to the preceding allegations directed against him as his answer to this Paragraph as though fully set forth herein.**

235.   Gray has a well-established First Amendment right to film police officers carrying out their official duties in public, including his own interactions with law enforcement, without police interference. *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000).

**ANSWER: Paragraph 235 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

236.   After placing Gray in handcuffs, Lt. Furr switched off Gray's camera.

**ANSWER: Defendant admits to shutting off the camera on Plaintiff's video camera after he handcuffed Plaintiff.**

237.   Lt. Furr knew that terminating the video recording was against Gray's wishes.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 237.**

238.   Lt. Furr's termination of Gray's filming did not serve any law enforcement or public safety purpose.

**ANSWER: Defendant denies the allegations of Paragraph 238.**

239.   Lt. Furr's stated intent (to preserve "your battery") was a pretext to prevent Gray from further recording the interaction.

**ANSWER: Defendant denies the allegations of Paragraph 239.**

240.   During a subsequent disciplinary investigation, Lt. Furr admitted that he turned off Gray's camera because Gray "frustrated" him, despite knowing he should have let the camera continue to record.

**ANSWER:** **Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 240.**

241.   Lt. Furr's termination of Gray's filming was intended to prevent Gray from continuing to film the interaction.

**ANSWER: Defendant denies the allegations of Paragraph 241.**

242.   Lt. Furr's termination of Gray's filming was a result of Lt. Furr's animus for Gray's expression, including the documenting of Lt. Furr's treatment of Gray and Gray's verbal challenges to Lt. Furr's authority.

**ANSWER: Defendant denies the allegations of Paragraph 242.**

243.   Lt. Furr's interference burdened Gray's right to film his interaction with law enforcement.

**ANSWER: Defendant denies the allegations of Paragraph 243.**

244.   In turning the camera lens away and then turning the camera off to avoid being filmed, Lt. Furr injured Gray by depriving him of his well-established constitutional right to film police officers carrying out their official duties in public, entitling Gray to declaratory relief and compensatory damages, including at least nominal damages, against Lt. Furr.

**ANSWER: Defendant denies the allegations of Paragraph 244.**

245.   Because Lt. Furr's interference with Gray's right to film was malicious, oppressive, and in reckless disregard of Gray's well-established First Amendment rights, Gray is entitled to punitive damages against Lt. Furr.

**ANSWER: Defendant denies the allegations of Paragraph 245.**

**SEVENTH CAUSE OF ACTION**
**First Amendment Challenge to Prior Restraint of Gray's Protected Speech**
**(42 U.S.C. § 1983)**
**(Against the City of Alpharetta**
**and Lt. Furr in his Individual Capacity)**

246.   Plaintiff re-alleges and incorporates paragraphs 1–165, 167–78, 183–88, and 190 of this Complaint as if repeated here.

**ANSWER: Defendant adopts and restates his answers to the preceding allegations directed against him as his answer to this Paragraph as though fully set forth herein.**

247.   The City of Alpharetta has implemented a system of prior restraints by issuing verbal and written trespass warnings denying access to public spaces traditionally used for expressive activity. *See, e.g.*, *Catron v. City of Saint Petersburg*, 658 F.3d 1260, 1267–69 (11th Cir. 2011) (applying prior restraint doctrine to trespass warnings).

**ANSWER: Paragraph 247 contains a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff. Defendant lacks knowledge sufficient to admit or deny the remaining allegations of Paragraph 248.**

248.   On information and belief, the City of Alpharetta delegates to its police officers, including Lt. Furr, the authority to issue trespass warnings, notices, or directives to members of the public barring them from city property or public spaces.

**ANSWER: Defendant denies the allegations of Paragraph 248.**

249.   Once an individual receives a trespass notice, reappearing in the noticed location can result in criminal citation or arrest. O.C.G.A. § 16-721(b)(2).

**ANSWER: Paragraph 249 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

250.   Prior restraints are permissible, if at all, only where they are issued pursuant to "narrow, objective, and definite standards[.]" *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–151 (1969).

**ANSWER: Paragraph 250 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

251.   The City of Alpharetta's system of issuing trespass notices is not subject to narrow, objective, and definite standards.

**ANSWER: Defendant denies the allegations of Paragraph 251.**

252.   A prior restraint is permissible, if at all, only where the government bears "the burden of going to court" to justify its prior restraint. *United States v. Frandsen*, 212 F.3d 1231, 1238 (11th Cir. 2000).

**ANSWER: Paragraph 252 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

253.   A prior restraint is permissible, if at all, only where the "restraint prior to a judicial determination" is only "for a specified brief time period in order to preserve the status quo[.]" *Id*.

**ANSWER: Paragraph 253 os a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

254.   A system of prior restraint is permissible, if at all, only where it provides "an avenue for prompt judicial review of" an official's decision. *Id*.

**ANSWER: Paragraph 254 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

255.  Lt. Furr issued a verbal trespass warning to Gray, indefinitely prohibiting Gray from continuing to engage in expressive activity in front of Alpharetta City Hall.

**ANSWER: Defendant denies the allegations of paragraph 255.**

256.  The trespass warning was an exercise of the authority delegated to Lt. Furr by the City of Alpharetta and/or enforcement of the City of Alpharetta's custom, policy, or practice of prohibiting "panhandling" in public.

**ANSWER: Defendant denies the allegations of Paragraph 256.**

257.  Lt. Furr memorialized the trespass warning in a written "CRIMINAL TRESPASS WARNING," but did not deliver this document to Gray.

**ANSWER: Defendant denies the allegations of Paragraph 257.**

258.  Lt. Furr did not inform Gray of any expiration date to the verbal trespass warning.

**ANSWER: Defendant denies the allegations of Paragraph 258.**

259.  When Gray indicated that he wanted to continue to engage in expressive conduct in front of City Hall, Lt. Furr told him he could not do so and that he needed to leave.

**ANSWER: Defendant denies the allegations of Paragraph 259.**

260.   The City of Alpharetta's system of issuing trespass notices did not require Lt. Furr to submit his determination to any court.

**ANSWER: Defendant denies the allegations of Paragraph 260.**

261.   Lt. Furr did not inform Gray of any process by which he could challenge the trespass warning.

**ANSWER: Defendant denies the allegations of Paragraph 261.**

262.   The City of Alpharetta's system of issuing trespass notices did not provide an avenue for prompt judicial review of the decision by Lt. Furr to bar Gray from a public space.

**ANSWER: Defendant denies the allegations of Paragraph 262.**

263.   The verbal trespass warning to Gray did not serve a legitimate governmental interest.

**ANSWER: Defendant denies the allegations of Paragraph 263.**

264.   The City of Alpharetta's system of issuing trespass warnings for public spaces has no procedural safeguards, such as the ability to contest or appeal their issuance.

**ANSWER: Defendant denies the allegations of Paragraph 264.**

265.   Even after the City of Alpharetta's police determined that Lt. Furr had violated Gray's rights, it took no action to rescind the trespass warnings, exhibiting

deliberate indifference to the continuing limitation on Gray's right to access a traditional public forum to engage in protected speech.

**ANSWER: Defendant denies the allegations of Paragraph 265.**

266.   In implementing, and applying to Gray, a system of prior restraints in the form of verbal and written trespass warnings without a meaningful opportunity to be heard, the City of Alpharetta and Lt. Furr injured Gray by depriving him of his First Amendment right to free speech, entitling Gray to declaratory and compensatory damages, including at least nominal damages.

**ANSWER: Defendant denies the allegations of Paragraph 266.**

267.   Because Lt. Furr's imposition of a prior restraint without due process of law was malicious, oppressive, and in reckless disregard of Gray's well-established First and Fourteenth Amendment rights, Gray is entitled to punitive damages against Lt. Furr.

**ANSWER: Defendant denies the allegations of Paragraph 267.**

**EIGHTH CAUSE OF ACTION**
**Violation of Fourteenth Amendment—Procedural Due Process**
**(42 U.S.C. § 1983)**
**(Against the City of Alpharetta**
**and Lt. Furr in his Individual Capacity)**

268.   Plaintiff re-alleges and incorporates paragraphs 1–165, 167–78, 183–90, and 247–267 of this Complaint as if repeated here.

**ANSWER: Defendant adopts and restates his answers to the preceding allegations directed against him as his answer to this Paragraph as though fully set forth herein.**

269.   The trespass warnings deprived Gray of his fundamental liberty interest in engaging in expressive activity in a traditional public forum and accessing Alpharetta property open to the public. *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266–67 (11th Cir. 2011) (citing *City of Chicago v. Morales*, 527 U.S. 41 (1999) (plurality opinion)).

**ANSWER: Paragraph 269 contains a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff. Defendant further denies issuing a trespass warning to Plaintiff.**

270.   The right to procedural due process requires an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

**ANSWER: Paragraph 270 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

271.   The trespass warning was issued without pre-deprivation opportunity to be heard.

66

**ANSWER: Defendant denies the allegations of Paragraph 271.**

272.   On information and belief, there is no established procedure to be heard concerning a trespass warning issued by the Alpharetta Department of Public Safety.

**ANSWER: Defendant denies the allegations of Paragraph 272.**

273.   The risk of an erroneous deprivation of Gray's interests is substantial because Alpharetta police officers may issue warnings without any procedure to challenge or rescind the warning. *Catron*, 658 F.3d at 1267.

**ANSWER: Paragraph 273 contains a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff. Defendant denies the remaining allegations of Paragraph 273.**

274.   The fiscal and administrative burdens attendant with a procedure to challenge or rescind the warning are minimal.

**ANSWER: Defendant lacks knowledge sufficient to admit or deny the allegations of Paragraph 274.**

275.   The fiscal and administrative burdens attendant with a prior restraint, including the availability of prompt judicial review and the government's burden to initiate judicial review, are mandated by the First Amendment. *Frandsen*, 212 F.3d at 1238.

**ANSWER: Paragraph 275 contains a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff. Defendant lacks knowledge sufficient to admit or deny the remaining allegations of Paragraph 275.**

276. Gray's fundamental and procedural due process rights have been injured by being verbally and formally forbidden, by Lt. Furr, from the public sidewalk in front of Alpharetta City Hall.

**ANSWER: Defendant denies the allegations of Paragraph 276.**

277. In implementing, and applying to Gray, a system of prior restraints in the form of verbal and written trespass warnings without a meaningful opportunity to be heard, the City of Alpharetta and Lt. Furr damaged Gray by depriving him of his Fourteenth Amendment right to due process, entitling Gray to declaratory and compensatory damages, including at least nominal damages.

**ANSWER: Defendant denies the allegations of Paragraph 277.**

**NINTH CAUSE OF ACTION**
**Violation of Gray's Fourth Amendment Rights—**
**Unlawful Seizure and False Arrest**
**(42 U.S.C. § 1983)**
**(Against Lt. Furr and Officer Shoffeitt in their Individual Capacities)**

278. Plaintiff re-alleges and incorporates paragraphs 1–165 and 167–75 of this Complaint as if repeated here.

**ANSWER: Defendant adopts and restates his answers to the preceding allegations directed against him as his answer to this Paragraph as though fully set forth herein.**

279.   Gray had a right under the Fourth Amendment, as incorporated against the State of Georgia and its municipalities by the Fourteenth Amendment, to be free from unreasonable seizure by Lt. Furr and Officer Shoffeitt. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *Alston v. Swarbrick*, 954 F.3d 1312, 1318–19 (11th Cir. 2020).

**ANSWER: Paragraph 279 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

280.   Lt. Furr seized Gray by demanding that he "come here," demanding that Gray provide identification, ordering Gray to place his hands behind his back, and handcuffing Gray.

**ANSWER: Defendant denies the allegations of Paragraph 280.**

281.   Lt. Furr's detention of Gray was unreasonable.

**ANSWER: Defendant denies the allegations of Paragraph 281.**

282.   A seizure must be "justified at its inception." *Terry*, 392 U.S. at 21. An investigative stop is permissible only where an officer has "an objectively reasonable suspicion" that an individual "had engaged, or was about to engage, in a crime." *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004).

**ANSWER: Paragraph 282 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

283.   A "reasonable officer in the same circumstances and possessing the same knowledge" as Lt. Furr could not have reasonably believed that he or she had reasonable suspicion to detain Gray. *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (quoting *Eubanks v. Gerwen*, 40 F.3d 1157, 1160 (11th Cir. 1994)).

**ANSWER: Defendant denies the allegations of Paragraph 283.**

284.   Lt. Furr's detention of Gray was therefore without arguable reasonable suspicion.

**ANSWER: Defendant denies the allegations of Paragraph 284.**

285.   Lt. Furr arrested Gray, placing him in handcuffs without an articulable and objectively reasonable belief that Gray was potentially dangerous or had committed a crime.

**ANSWER: Defendant denies the allegations of Paragraph 285.**

286.   Officer Shoffeitt ratified and effectuated Gray's arrest.

**ANSWER: Defendant denies the allegations of Paragraph 286.**

287.   Reasonable officers in the same circumstances and possessing the same knowledge as Lt. Furr and Officer Shoffeitt could not have believed that probable

cause existed to arrest Gray. *Swint v. City of Wadley*, 51 F.3d 988, 996 (11th Cir. 1995); *Alston*, 954 F.3d at 1319.

**ANSWER: Defendant denies the allegations of Paragraph 287.**

288.   Lt. Furr and Officer Shoffeitt's arrest of Gray was therefore without arguable probable cause.

**ANSWER: Defendant denies the allegations of Paragraph 288.**

289.   In detaining and arresting Gray without adequate cause, Lt. Furr and Officer Shoffeitt damaged Gray by depriving him of his well-established Fourth Amendment right to be free of unreasonable seizure, entitling Gray to declaratory relief and compensatory damages, including at least nominal damages.

**ANSWER: Defendant denies the allegations of Paragraph 289.**

290.   Because Lt. Furr and Officer Shoffeitt's seizure of Gray was malicious, oppressive, and in reckless disregard of Gray's well-established Fourth Amendment rights, Gray is entitled to punitive damages against Lt. Furr and Officer Shoffeitt.

**ANSWER: Defendant denies the allegations of Paragraph 290.**

**TENTH CAUSE OF ACTION**
**Violation of Gray's Fourth Amendment Rights—**
**Unlawful Search**
**(42 U.S.C. § 1983)**
**(Against Lt. Furr in his Individual Capacity)**

291.   Plaintiff re-alleges and incorporates paragraphs 1–165 and 167–75, and 279–88 of this Complaint as if repeated here.

**ANSWER: Defendant adopts and restates his answers to the preceding allegations directed against him as his answer to this Paragraph as though fully set forth herein.**

292.   Gray had a right under the Fourth Amendment, as incorporated against the State of Georgia and its municipalities by the Fourteenth Amendment, to be free from unlawful search by Lt. Furr. *Bourgeois v. Peters*, 387 F.3d 1303, 1312, 1315–17 (11th Cir. 2004).

**ANSWER: Paragraph 292 is a statement of law requiring no response from Defendant. Defendant denies liability to Plaintiff.**

293.   There was no legal justification for Lt. Furr to reach into Gray's pocket.

**ANSWER: Defendant denies the allegations of Paragraph 293.**

294.   Lt. Furr conducted a warrantless search of Gray's pocket.

**ANSWER: Defendant denies the allegations of Paragraph 294.**

295.   Lt. Furr's search of Gray's pocket was unreasonable.

**ANSWER: Defendant denies the allegations of Paragraph 295.**

296.   If Lt. Furr searched Gray's pocket during a *Terry* stop, Lt. Furr's search was not reasonably limited in scope to "the protection of the officer by disarming a potentially dangerous man." *Sibron v. New York*, 392 U.S. 40, 65–66 (1968).

**ANSWER: Defendant denies the allegations of Paragraph 296.**

297.   If Lt. Furr searched Gray's pocket as a search incident to arrest, it was unreasonable because Gray's arrest was without probable cause.

**ANSWER: Defendant denies the allegations of Paragraph 297.**

298.   In searching Gray's person without adequate cause or a search warrant, Lt. Furr damaged Gray by violating his well-established Fourth Amendment right against unreasonable search, entitling Gray to declaratory relief and compensatory damages, including at least nominal damages, against Lt. Furr.

**ANSWER: Defendant denies the allegations of Paragraph 298.**

299. Because Lt. Furr's conduct in searching Gray's person was malicious, oppressive, and in reckless disregard of Gray's well-established Fourth Amendment right, Gray is entitled to punitive damages against Lt. Furr.

**ANSWER: Defendant denies the allegations of Paragraph 299.**

## PRAYER FOR RELIEF

WHEREFORE, Gray respectfully requests that this Court enter judgment against Defendants and issue the following forms of relief:

A.    Declare that Gray's expressive activity was protected by the First Amendment;

B.    Declare that the City of Alpharetta's policy, practice, or custom of prohibiting all "panhandling" in the City of Alpharetta violates the First Amendment;

C.    Declare that Lt. Furr violated Gray's rights to speak, to do so anonymously, and to refrain from speaking;

D.    Declare that Lt. Furr violated Gray's First Amendment right to film their interaction in its entirety;

E.    Declare that the City of Alpharetta's practice, effectuated by Lt. Furr's verbal and written criminal trespass warnings, constitutes an unlawful system of prior restraints;

F.    Declare that Lt. Furr's verbal and written criminal trespass warnings issued to Gray violated Gray's fundamental and procedural due process rights;

G.    Declare that Lt. Furr and Officer Shoffeitt violated Gray's Fourth Amendment right to be free from unreasonable seizure;

H.    Declare that Lt. Furr violated Gray's Fourth Amendment right to be free from unreasonable search;

I.      Issue an injunction prohibiting the City of Alpharetta from enforcing its policy, practice, or custom of prohibiting all "panhandling" in the City of Alpharetta;

J.      Award nominal, compensatory, and other damages to Gray in an amount determined by the enlightened conscience of fair and impartial jurors;

K.      Award punitive damages against Lt. Furr and Officer Shoffeitt;

L.      Award reasonable attorneys' fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable law; and

M.      Award such other relief as this Court deems just and proper.

**<u>ANSWER:</u> Defendant denies any and all allegations of wrongdoing and denies any and all prayers for relief contained within this unnumbered WHEREFORE clause of Plaintiff's Complaint.**

## <u>DEFENDANT FURR'S AFFIRMATIVE DEFENSES</u>

NOW COMES Defendant Arick Furr, by and through his counsel, Emily E. Schnidt of Borkan & Scahill, Ltd., and without prejudice to his denials and all other statements in his answer and elsewhere, state the following for his Affirmative Defenses to Plaintiff's Complaint:

1. At all times during the events alleged in Plaintiff's Complaint, a reasonable police officer, objectively viewing the facts and circumstances then confronting Defendant at issue during the incident which allegedly provides the basis for the present case, could have reasonably believed that the actions taken by him was objectively reasonable and were within constitutional limits that were clearly established at the time. Defendant is, therefore, entitled to qualified immunity.

2. Defendant cannot be held liable for Plaintiff's 42 U.S.C. § 1983 claims unless he individually caused or participated in an alleged constitutional deprivation because individual liability for damages under 42 U.S.C. § 1983 is predicated upon personal responsibility.

3. To the extent Plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by Plaintiff must be reduced by application of the principle a Plaintiff has a duty to mitigate his damages.

4. Plaintiff's Complaint fails to state a claim upon which relief may be granted and should be dismissed with prejudice.

WHEREFORE, Defendant denies Plaintiff is entitled to any judgment whatsoever as against him and requests this Court enter judgment in his favor and

against Plaintiff on all causes of action, and for its costs and such further relief as this Court deems just.

## JURY DEMAND

Defendant respectfully requests a trial by jury.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By: /s/ Emily E. Schnidt
        Emily E. Schnidt

*Attorney for Defendant Arick Furr*

Emily E. Schnidt
Georgia Bar No. 330676
BORKAN & SCAHILL, LTD.
20 South Clark Street, Suite 1700
Chicago, Illinois 60603
(312) 580-1030
eschnidt@borkanscahill.com

## <u>CERTIFICATE OF FONT COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), counsel for Defendant Furr hereby certifies that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C): Times New Roman (14 point). This 8th day of June, 2023.

/s/ *Emily E. Schnidt*
Emily E. Schnidt
Georgia Bar No.: 330676
Borkan & Scahill, Ltd.
Two First National Plaza
20 S. Clark Street, Suite 1700
Chicago, IL 60603
Tel: (312) 580-1030
Fax: (312) 263-0128
Email:eschnidt@borkanscahill.com

*Counsel for Defendant Arick Furr*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JEFFREY GRAY,

*Plaintiff,*

v.

CITY OF ALPHARETTA, a political
subdivision of the State of Georgia;
ARICK FURR, a Lieutenant of the
Alpharetta Department of Public Safety,
in his individual capacity; and HAROLD
SHOFFEITT, an officer of the Alpharetta
Department of Public Safety, in his
individual capacity,

*Defendants.*

Case No. 23 CV 00463-MLB

Hon. Michael L. Brown

Jury Trial Demanded

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2023, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system which

will automatically send notification of such filing to all Counsel of Record.

This 8th day of June, 2023

/s/ *Emily E. Schnidt*
Emily E. Schnidt
Georgia Bar No.: 330676
Borkan & Scahill, Ltd.
Two First National Plaza
20 S. Clark Street, Suite 1700
Chicago, IL 60603

Tel: (312) 580-1030
Fax: (312) 263-0128
Email:eschnidt@borkanscahill.com